## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JEROME BURNETT,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-22-02840** |
| **BJ'S WHOLESALE CLUB,** | * | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Plaintiff Jerome Burnett, appearing pro se,[1] has brought this action against his former employer, BJ's Wholesale Club, Inc. ("BJ's"), alleging employment discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Currently pending before the Court is Defendant's Motion for Summary Judgment. (ECF No. 80.) Plaintiff has filed a Response in opposition (ECF No. 98), and the Motion is now ripe.[2] No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court will grant summary judgment in Defendant's favor.

Additionally, Plaintiff has filed various motions (ECF Nos. 68, 69, 76, 85, 86, 99, 105, 113, 119, 121, 130, 139–141.) The Court previously denied many of these motions without prejudice when Plaintiff was briefly represented by counsel, given that the Court does not permit hybrid

---

[1] The Court previously appointed pro bono counsel to represent Plaintiff, but, after holding a hearing on February 29, 2024, the Court granted Plaintiff's request to terminate the representation. (ECF No. 136.)

[2] Additionally, throughout this case, Plaintiff has submitted various documents containing argument and pieces of evidence. Many of these documents contain Plaintiff's unsworn and unsupported allegations, which the Court ordinarily cannot consider on a motion for summary judgment. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). However, out of the Court's special solicitude for pro se plaintiffs, the Court will consider these documents when relevant. That said, even assuming the Court has discretion to consider these documents given Burnett's pro se status, they contain nothing that establishes a genuine dispute as to material fact.

representation. (*See* ECF No. 128.) Given Plaintiff's renewed pro se status and the Court's desire to resolve issues on the merits wherever possible, the Court will *sua sponte* reconsider these motions, as well as the more recently filed ones. Because the motions have no grounding in the law, they will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[3]

The Court refers the parties to its April 17, 2023 Memorandum and Order for a full discussion of the procedural history of this case. (ECF No. 33.) As relevant here, in the operative Amended Complaint, Plaintiff alleges Defendant violated the ADA and Title VII by terminating his employment, failing to accommodate his disability, retaliating against him, and committing other unspecified acts of disability discrimination. (ECF No. 23 at 5.) Plaintiff alleges that he suffers from PTSD, bipolar disorder, depression, anxiety, schizophrenia, and chronic pain. (*Id.*)

In June 2021, Plaintiff was hired to work as an inventory control forklift driver at a BJ's store in Owings Mills, Maryland. (Burnett Dep. at 76, ECF No. 80-7 at 21; "New Member Information," ECF No. 80-6 at 2.) His responsibilities included using a reach truck (a vehicle similar to a forklift) to retrieve products and count and maintain inventory. (Burnett Dep. at 76–77, ECF No. 80-7 at 21–22.) He typically worked the early morning shift, from 3 a.m. until 11 a.m. (*Id.* at 79, ECF No. 80-7 at 24.)

Plaintiff states that he told his supervisor, Sicone McLean, about his disabilities when he was hired. (*Id.* at 145–46, ECF No. 80-7 at 82–83.) He also told Mr. McLean that he received Social Security Disability Insurance ("SSDI") benefits. (*Id.*) It is not clear whether BJ's received

---

[3] In reviewing the facts of this case, the Court will draw on excerpts from Plaintiff's August 17, 2023 deposition that Defendant has introduced into evidence. (*See* ECF No. 80-7.) Plaintiff has docketed two letters requesting that the Court not consider any evidence from his deposition on the grounds that he was incapacitated at the time or, alternatively, that the deposition was not taken by a neutral recorder. (ECF Nos. 52, 54.) The Court denied the requests without prejudice on August 25, 2023. (ECF No. 56.) Plaintiff has not renewed his requests. Furthermore, Plaintiff has provided no evidence to support his assertions that he was intoxicated or incapacitated at the time of the deposition or that the recorder was biased.

any formal documentation of Plaintiff's disabilities. Plaintiff states that he tried to submit "state paperwork" relating to his disabilities but BJ's refused to sign it. (*Id.*)

Upon starting work at BJ's, Plaintiff discovered what he considered numerous workplace safety hazards in violation of state and federal law. In particular, Plaintiff observed that employees "didn't wear steel-toed shoes when they were supposed to when they operated the heavy lift equipment, which is a reach truck." (*Id.* at 89, ECF No. 80-7 at 31.) As a result of his concern about workplace safety, Plaintiff sometimes sat in his car while he was clocked in for work. (*Id.* at 91, ECF No. 80-7 at 33.) He claims that he did this "for safety reasons to avoid myself getting injured on the job" from the unsafe conditions inside the store. (*Id.*)

On October 13, 2021, Plaintiff was involved in an incident with a coworker in which he nearly fell and hit his head. (*Id.* at 96, 102–103, ECF No. 80-7 at 35, 42–43.) Defendant has produced a witness statement which Plaintiff signed and dated that same day, October 13, 2021. (ECF No. 80-8.) In that statement, Plaintiff states that, as he was moving product in an aisle of the store, his coworker Isaiah Patterson tripped him. (*Id.*) The statement also provides:

> Once [Mr. Patterson] tripped me, he grabbed me and pushed me into a pallet on the reach truck. The incident has made the hernia mesh in my body move uncomfortabl[y]. I may have to receive medical attention from his actions.

(*Id.*)

Mr. Patterson also wrote and signed a witness statement on October 13, 2021. (ECF No. 49-4 at 3–4.) In Mr. Patterson's account, Plaintiff tripped on his own while trying to squeeze between two pallets. (*Id.*) Even though—according to this version of events—Mr. Patterson had nothing to do with the incident, Mr. Patterson reported that Plaintiff then approached him and warned him not to trip him again. (*Id.*)[4]

---

[4] Plaintiff also produced a witness statement by another coworker who was present at the scene of the incident, Denise Witzen. (ECF No. 49-4 at 5–6.) However, this statement is not easily legible and it appears incomplete. Accordingly,

3

Plaintiff's own characterization of the October 13 incident seems to have changed over time. In Plaintiff's Complaint, he characterizes the incident as an assault against him. (Am. Compl., ECF No. 23 at 6.)  But during his August 17, 2023 deposition, Plaintiff explained that he now believed his coworker was trying to "protect" him "from falling and hitting [his] head." (Burnett Dep. at 96, ECF No. 80-7 at 35.)  Immediately after the incident, Plaintiff was "angry" and confronted his coworker to ask if he wanted to fight.  (*Id.*)  Plaintiff apparently subsequently realized that his coworker had not meant to harm him and "forgave" him.  (*Id.*)

As a result of the October 13 incident, Plaintiff filed a workers' compensation claim.  (*Id.* at 103, ECF No. 80-7 at 42.)

Plaintiff's October 13 witness statement (ECF No. 80-8) implies that he sustained a groin injury from the incident, and this appears to be corroborated in a patient visit information record from Patient First, an urgent care center that Plaintiff visited on October 20, 2021.  (ECF No. 66-2.)  But in his Complaint and during his deposition, Plaintiff failed to specify the nature of his physical injuries from the incident (*see* Am. Compl. at 6, ECF No. 23 at 6; Burnett Dep. at 102–105, ECF No. 80-7 at 41–44), although he does state that he developed agoraphobia as a result of it.  (Burnett Dep. at 105, ECF No 80-7 at 44.)

In addition to Plaintiff's October 13, 2021 witness statement that he "may have to receive medical attention," Plaintiff contends that he spoke to Kaylee,[5] a human resources specialist, and asked her to take him off the schedule so he could seek medical attention.  Kaylee told Plaintiff "[j]ust make sure let them know." (Burnett Dep. at 112, ECF No. 80-7 at 51.)  Plaintiff stated that he is not sure whether Kaylee communicated his message to others at BJ's or successfully

---

the Court does not rely on this statement in deciding on the Motion.  That said, from the portions that the Court can readily comprehend, Ms. Witzen's statement does not appear to favor one party or the other.

[5] The record does not indicate Kaylee's last name.

4

conveyed his request to be taken off the schedule. (*See id.* at 177, ECF No. 80-7 at 56.) Plaintiff also believed that Patient First would send over documentation of his visit to BJ's (*see id.* at 112, ECF No.80-7 at 51), but there is no indication that Patient First actually did so.

To his frustration and despite his conversation with Kaylee, Plaintiff remained scheduled for work shifts the following week. Plaintiff admits that on October 19, 2021, he clocked into work at 2:59 a.m. and clocked out at 10:46 a.m. (Burnett Dep. at 115, ECF No. 80-7 at 54.) Plaintiff also admits that, despite clocking in, he did not actually go into the store to work because of his concerns about store safety. (*Id.* at 122, ECF No. 80-7 at 61 ("Due to safety issues in the warehouse, I didn't go in.").)

Plaintiff's testimony as to October 20, 2021 is more contradictory. At one point during his deposition, Plaintiff's asserts he was not able to clock in that day because the work application on his phone "stopped [him] from being able to clock in." (*Id.* at 115, ECF No. 80-7 at 54.) Plaintiff says he saw that he "wasn't on the schedule" that day and therefore he did not go to work but instead went to Patient First for treatment. (*Id.* at 116, ECF No. 80-7 at 55.) But later in the deposition, Plaintiff seems to admit that he did in fact clock in to work:

Q: And you didn't actually work on October 19th or 20th; correct?

A: I punched in. I was not able to work because I was injured and I should not have been on the schedule. They just put me on the schedule because I was just trying to, hey, look, I clocked in because I was trying to avoid job abandonment.

(*Id.* at 126–27, ECF No. 80-7 at 65–66.)

Additionally, during his deposition, Plaintiff was shown video evidence of a car passing by the BJ's store at the beginning and end of his shifts on October 19th and 20th. As for the video of the 19th, Plaintiff admitted that the video shows "the vehicle I utilize." (*Id.* at 120, ECF No. 80-7 at 59.) As for the video of the 20th, Plaintiff did not deny that the video appears to show the

5

same vehicle, but he declined to confirm that the car was his because the video did not show the car's license plate number. (*Id.* at 123–26, ECF No. 80-7 at 62–65.)

Plaintiff also admits that he clocked into work on October 26th and 27th but did not actually work. (Burnett Dep. at 134, ECF No. 80-7 at 73 ("Q: [I]s it your testimony that you didn't work on October 26th and October 27?" "A: Yes, I did clock in, I didn't work, none of that stuff . . . if I were paid, that was on him [Mr. McLean].").)

Defendant has provided further evidence to support its contention that Plaintiff clocked in but failed to work on October 19, 20, 26, and 27. Defendant has attached a document entitled "Time Detail" which purports to be a printout of records of certain dates that Plaintiff clocked in and out of work shifts. (ECF No. 80-9.) This document shows that:

- On October 19, 2021, Plaintiff clocked into work at 2:59 a.m. and clocked out at 10:46 a.m.
- On October 20, 2021, Plaintiff clocked into work at 2:59 a.m. and clocked out at 10:16 a.m.
- On October 26, 2021, Plaintiff clocked into work at 5:01 a.m. and clocked out at 10:01 a.m.
- On October 27, 2021, Plaintiff clocked into work at 5:02 a.m. and clocked out at 10:07 a.m.

(*Id.*) Plaintiff has not pointed the Court to anything to rebut this evidence.

During his deposition, when asked if Plaintiff sent any emails to BJ's asking for medical leave, Plaintiff responded "I don't believe so. I think all I was—all I was really counting on was Patient First paperwork that I have to go see a specialist." (Burnett Dep. at 128–29, ECF No. 80-7 at 67–68.)

Plaintiff speculates that when Mr. McLean read his workers' compensation complaint (in which Plaintiff alleged that BJ's was not in compliance with workplace safety rules), Mr. McLean "got into self-defense mode for the company and he made a conscientious decision to just terminate my employment regardless of anything." (*Id.* at 130, ECF No. 80-7 at 69.) As a result, Plaintiff

supposes that Mr. McLean decided to keep Plaintiff on the schedule despite his injury, thinking, "he won't show up, and I'll say it's job abandonment." (*Id.*)  And, Plaintiff believed, if he *did* show up to work, the company would keep paying him in order to defeat his workers' compensation claim by pointing to the fact that Plaintiff was continuing to earn his wages. (*Id.*) Essentially, Plaintiff believes that there was a "conspiracy" to fire him because of the fear that he would report BJ's safety violations to the Occupational Safety and Health Administration ("OSHA") or to its state counterpart, Maryland Occupational Safety and Health ("MOSH"). (*Id.* at 131, ECF No. 80-7 at 70.)

On November 1, 2021, Defendant terminated Plaintiff's employment. (*See* Disciplinary Action Form, ECF No. 80-15.)  Defendant's stated reason for the termination was that Plaintiff clocked into work on October 19, 20, 26, and 27, 2021 but did not actually perform work, in violation of the company's Wage and Hour Policy. (*Id.*)

Plaintiff subsequently filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a "Determination of Charge," also known as a right-to-sue letter, in August 2022. (ECF No. 5 at 3.)  Plaintiff filed the instant suit in Maryland state court in September 2022, and Defendant removed the action to this Court in November 2022, citing this Court's federal question jurisdiction. (Notice of Removal, ECF No. 1.)

## II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 80)

### A.  Legal Standard

A party seeking summary judgment must show that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A genuine dispute of material fact

exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party, but the "mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986). In proving the presence or absence of a genuine dispute, either party may point to materials in the record, such as admissions, stipulations, depositions, documents, and electronically stored information. Fed. R. Civ. P. 56(c). If the moving party meets its initial burden, the non-moving party cannot rely solely on allegations in pleadings to defeat the motion but must instead point to specific facts in the record that show the existence of a genuine dispute. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). In determining whether a genuine dispute exists, the Court views the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255; *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).[6]

The Court will review Plaintiff's claims under both the ADA and Title VII and explain why summary judgment in Defendant's favor is warranted. Additionally, the Court will explain why Defendant is entitled to summary judgment to the extent that Plaintiff can be understood to bring claims pursuant to the Occupational Safety and Health ("OSH") Act, 29 U.S.C. § 651 *et seq.*

**B. Plaintiff's ADA Claims**

The ADA "makes it unlawful for an employer, with respect to hiring, to 'discriminate against a qualified individual with a disability because of the disability of such individual.'" *Raytheon Co. v. Hernandez*, 540 U.S. 44, 46 (2003) (quoting 42 U.S.C. § 12112(a)). A "disability" under the ADA generally refers to an "impairment that substantially limits one or more major life

---

[6] Plaintiff appears to believe that any grant of summary judgment in Defendant's favor would necessarily violate his Seventh Amendment right to a jury trial. (*See, e.g.*, ECF No. 85.) But courts have long recognized that "where summary judgment is properly granted, no Seventh Amendment issue arises." *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 221 n.12 (4th Cir. 1978) (citing *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 320 (1902)).

activities," including, as relevant here, "working." 42 U.S.C. § 12102(1), (2)(A). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111.

### *1. Disability Discrimination*

#### *a. Legal Standard*

To establish a prima facie case for employment discrimination under the ADA, a plaintiff must show "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)) (alterations in original).

To establish causation, the plaintiff must produce evidence from which a jury could reasonably infer that the defendant knew of his disability and took an adverse employment action because of it. *Jacobs*, 780 F.3d at 575. A jury may reasonably infer causation from a close temporal proximity between the time when the defendant learned of the disability (or when the plaintiff requested accommodation) and when the adverse employment action occurred. *Id.*

A plaintiff may prove disability discrimination through direct or indirect evidence, or through the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jacobs*, 780 F.3d at 572. Under that framework, a plaintiff alleging employment discrimination under the ADA must produce evidence that establishes a prima facie case of discrimination. If the plaintiff makes this prima facie showing, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for taking the adverse employment action. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates a legitimate,

non-discriminatory reason for the termination, the burden shifts back to the plaintiff to show that the defendant's asserted justifications are pretextual. *Id.* at 575–76. The plaintiff can show pretext through direct or circumstantial evidence, including by showing "the asserted justifications, even if true, are post hoc rationalizations invented for purposes of litigation." *Id.* at 576.

#### b. Analysis

Plaintiff has failed to set forth a prima facie case of disability discrimination. Even assuming that Plaintiff has established a prima facie case, Defendant is nevertheless entitled to summary judgment because it had a legitimate, non-discriminatory reason for firing him, and there is no evidence from which a jury could reasonably conclude that this reason was pretextual.

Turning first to the prima facie elements, the parties do not seriously dispute that Plaintiff had one or more disabilities within the meaning of the ADA. But Plaintiff cannot satisfy the second element, that he "was a qualified individual for the employment in question." *Jacobs*, 780 F.3d at 574. It is undisputed that Plaintiff was frequently absent from work, without excuse, in the days leading up to his termination. These unexcused absences, on days when Plaintiff clocked into work, were in violation of BJ's policies, and there is no evidence suggesting that these policies were unreasonable or unfair. Under such circumstances, no reasonable jury could conclude that Plaintiff's "performance at the time of the discharge met the legitimate expectations of his employer." *Rubino v. New Acton Mobile Inds., LLC*, 44 F. Supp. 3d 616, 623 (D. Md. 2014).

Further, the Plaintiff cannot establish an inference of causation, another required element of a prima facie case. The Court credits—as it must—Plaintiff's assertion in his deposition that he informed his employer about his disabilities at the time he was hired in June 2021. (Burnett Dep. at 144–46, ECF No. 80-7 at 81–83.) But the gap of four to five months between when Plaintiff disclosed his disabilities in June 2021 and when he was fired on November 1 is too long

Case 1:22-cv-02840-JKB   Document 143   Filed 03/08/24   Page 11 of 20

produces no evidence to support it beyond his own musings, which are not based on personal knowledge. It is well established that "[m]ere unsupported speculation is insufficient to defeat a properly supported summary judgment motion." *Warfaa v. Ali*, 1 F.4th 289, 296 (4th Cir. 2021) (quotation omitted) (alteration in original); *see also Othentec Ltd. v. Phelan*, 526 F.3d 135, 141 (4th Cir. 2008) (stating that a party "cannot create a genuine issue of material fact through . . . the building of one inference upon another" (quotation omitted)).

For these reasons, no reasonable jury could find that Defendant discriminated against Plaintiff on the basis of his disability, and Defendant is therefore entitled to summary judgment.

### 2. *Failure to Accommodate*

#### a. *Legal Standard*

A plaintiff bringing an ADA claim may also proceed under a theory of failure to accommodate. To establish a prima facie case for failure to accommodate under the ADA, the plaintiff must show that (1) she has a disability, (2) the defendant had notice of the disability, (3) with reasonable accommodations she could have performed the essential functions of the job, and (4) the employer refused to make such accommodations. *Jacobs*, 780 F.3d at 579. To make out a prima facie failure-to-accommodate case the plaintiff must make an "adequate request" for accommodations, "thereby putting the employer on notice." *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 179 (4th Cir. 2023).

#### b. *Analysis*

Plaintiff fails to establish a prima facie failure-to-accommodate case, because even assuming—without deciding—that the other elements are met, there is no evidence from which a jury could reasonably conclude that Plaintiff put his employer on notice of his need for accommodations. The Court will credit Plaintiff's assertions that he complained to his employer

about perceived workplace safety/OSHA violations, but he has produced no evidence that he explained to his employer how his concerns about workplace safety issues were tied to a specific need for accommodations due to a disability. Plaintiff advanced the theory at his deposition that "I'm part of the ADA, so if safety rules and regulations of any sort is being violated, that is a direct violation to the accommodation rules under the ADA." (Burnett Dep. at 150:7–10, ECF No. 80-7 at 87.) But this theory has no grounding in the law. The ADA protects people with disabilities against disability-based discrimination and failures of accommodation; it does not bestow on people with disabilities a private right of action to insist on the enforcement of all safety regulations, whether related to disabilities or not.[7]

Beyond his assertions about workplace safety, there is no evidence that Plaintiff properly requested accommodations. Viewing the evidence in the light most favorable to him, a jury could conclude that Plaintiff spoke to Kaylee, a BJ's human resources specialist, and asked her to take him off the schedule so he could seek medical attention. (Burnett Dep. at 112, ECF No. 80-7 at 51.) But there is no evidence in the record that Kaylee was the proper person for receiving accommodation requests, and Plaintiff himself admits that he does not know whether Kaylee communicated his request to others at the company. (*Id.* at 117, ECF No. 80-7 at 56.) Indeed, according to Plaintiff, Kaylee specifically warned him to "make sure [to] let them know" that he wanted time off of work. (*Id.* at 112, ECF No. 80-7 at 51.) Furthermore, Plaintiff's statement to

---

[7] It is of course possible that a person with disabilities may have a particular need for the enforcement of certain workplace safety rules. In such circumstances a reasonable accommodation request might entail little more than asking that these rules be followed. But the safety issue Plaintiff focuses on is the purported lack of a requirement for BJ's employees to wear steel-toed shoes. (*See, e.g.*, ECF No. 49 at 1.) Even assuming (without deciding) that using steel-toed shoes was required by safety rules, Plaintiff has not explained how enforcement of this rule was required for his particular set of disabilities, which appear to be a range of mental illnesses plus a hernia mesh issue. Moreover, it is not at all clear how it would affect Plaintiff if *other* employees do or do not wear steel-toed shoes; nothing in the record indicates that BJ's prevented *Plaintiff* from wearing steel-toed shoes to protect his own feet if he so wished.

13

BJ's on October 13 that he "may have to receive medical attention" (ECF No. 80-8) was too vague to put BJ's on notice that he was actually requesting accommodations for a disability.

Plaintiff also points to two doctors' notes from October 2023. (*See* ECF No. 95.) The first is a note dated October 9, 2023 and the second is a certification regarding an October 9, 2023 doctors' appointment. These documents fail to establish a genuine issue of material fact because—given that they were created two years after the events surrounding his termination—they shed no light on whether Plaintiff contemporaneously requested accommodation from BJ's. Finally, Plaintiff docketed additional evidence on February 29, 2024, but this evidence was not submitted to the Court in a timely manner and—even had it been timely—does not show that Defendant was notified of any request for accommodations. (ECF No. 139.)[8]

Because there is no evidence that Plaintiff properly requested accommodations from Defendant before his termination, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim. *See Lashley*, 66 F.4th at 179 (affirming grant of summary judgment when the plaintiff did not present an accommodations request to the appropriate decision-maker).

### C. Plaintiff's Title VII Claims

#### *1. Legal Standard*

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to the terms and conditions of employment because of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

---

[8] The evidence consists of (1) a notice by the Maryland Workers' Compensation Commission, dated October 18, 2021, indicating that the Commission received Plaintiff's complaint about a workplace injury; (2) a receipt from Patient First showing Plaintiff was charged for medical services between October 2021 and November 2022; (3) a letter from BJ's to MOSH, dated November 6, 2023, indicating that BJ's received a complaint about improperly stacked pallets and lack of protective footwear; (4) a Patient First document reflecting that Plaintiff visited the clinic on October 12, 2021 for a workers' compensation-related injury; (5) a notice from Patient First to Plaintiff stating that it will "[f]orward to employer or employer's Workers' Compensation Insurance Carrier on file (1) a bill, and (2) a Medical Record visit copy"; and (6) a BJ's "Disciplinary Action Form," dated November 1, 2021, stating that Plaintiff was being fired for repeatedly failing to show up on days when he clocked in to work. (ECF No. 139-1–139-6.)

Absent direct evidence, the elements of a prima facie case of discrimination under
Title VII are: (1) membership in a protected class; (2) satisfactory job performance;
(3) adverse employment action; and (4) different treatment from similarly situated
employees outside the protected class.

*Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

Title VII also contains an anti-retaliation provision, which prohibits employers from discriminating against employees who have opposed any practice made unlawful by Title VII or who have participated in a Title VII investigation. 42 U.S.C. § 2000-e3(a). To establish a prima facie case of retaliation under Title VII, the plaintiff must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190.

### 2. Analysis

Plaintiff's Title VII claim fails for the simple reason that he has never alleged, let alone produced evidence to show, that his employer has taken any discriminatory actions against him on the basis of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. The Amended Complaint focuses solely on the alleged discrimination based on disability. (*See generally* ECF No. 23.) To the extent Plaintiff contends that his disability status brings him under the protection of Title VII, that argument is unavailing, as the statute by its plain terms does not cover disability. *See Crown v. McElroy Coal Co.*, 290 F. Supp. 2d 693, 696 (N.D. W. Va. 2003) ("[D]isability is not a protected class under Title VII[.]").

Plaintiff's retaliation claim under Title VII also fails. In his deposition, Plaintiff appears to contend that he was fired because he made or threatened to make complaints about violations of OSHA safety rules. (Burnett Dep. at 131–132, ECF No. 80-7 at 70–71.) As the Court will discuss below, the OSH Act does not provide a private right of action for individuals retaliated against for reporting safety violations. But in any event, Title VII's retaliation provision covers

only retaliation relating to an employment practice made unlawful "by this subchapter," (*i.e.*, Title VII). The OSH Act is not part of Title VII's subchapter; indeed, it is codified in an entirely different title of the United States Code. *See* OSH Act, 29 U.S.C. §§ 651–678. Thus, Plaintiff cannot establish a prima facie case of retaliation under Title VII.

Finally, the Court observes that Defendant has raised the alternative defense that Plaintiff failed to exhaust his administrative remedies with respect to his Title VII allegations. (ECF No. 80-1 at 21.) Title VII is subject to a non-jurisdictional, but mandatory requirement that a plaintiff file a charge with the EEOC before filing suit in federal court. *Ft. Bend Cnty., Tex. v. Davis*, 587 U.S. ___, 139 S. Ct. 1843, 1851 (2019). Here, Plaintiff *did* file a charge with the EEOC and obtain a right-to-sue letter. (*See* ECF No. 80-16.) But the filed charge related solely to disability and retaliation for making complaints relating to OSHA standards and workers' compensation, not race, sex, or other Title VII categories. (*See id.* at 4–5.) "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (quotation omitted). Thus, Plaintiff's EEOC charge relating to workers' compensation, OSHA, and disability discrimination cannot establish that he exhausted his administrative remedies prior to filing suit. For this independent reason, Defendant is entitled to summary judgment on Plaintiff's Title VII claims.

### D. Plaintiff's OSH Act Claims

As the Court has already explained in an earlier opinion in this case:

> The relevant provision governing OSHA complaints does not provide a private right of action. *See* 29 U.S.C. § 660(c); *see also Doe I v. Scalia*, 58 F.4th 708, 711 (3rd Cir. 2023) ("In general, OSHA, rather than private litigants, is responsible for assuring workplace safety. In furtherance of that objective, the OSH Act funnels safety grievances through OSHA's administrative processes.").

*Burnett v. BJ's Wholesale Club, Inc.*, Civ. No. JKB-22-2840, 2023 WL 2414492, at \*4 (D. Md. Mar. 8, 2023) (ECF No. 26 at 8). Thus, to the extent that Plaintiff can be understood to be attempting to assert claims under the OSH Act for violations of OSHA standards, those claims are deficient as a matter of law, and Defendant is entitled to summary judgment in its favor.

## III.   PLAINTIFF'S MOTIONS

Finally, the Court will turn to the various pro se motions Plaintiff has filed in this case. They are all meritless and will be denied.

### A.  Plaintiff's Motions for Leave to File Surreply (ECF Nos. 69, 85, 99, 121)

Surreplies may only be filed with the Court's permission. *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017). They "are highly disfavored in this district," but may be permitted when an opposing party raises an argument for the first time in a reply brief and the movant would otherwise be unable to address it. *Id.* (quotation omitted).

Plaintiff's September 3, 2023 Motion for Leave to File a Surreply (ECF No. 69) appears to ask the Court to allow Plaintiff to file a surreply to Defendant's Summary Judgment Motion. This Motion was filed almost a month before Defendant had even filed its Summary Judgment Motion on October 2, 2023. The Motion was thus premature. In addition, it does not advance any argument as to why Plaintiff should be entitled to file a surreply other than a bald statement that "[t]he defendant does not have the right to a Summary Judgment." (*Id.*) This statement has nothing to do with Plaintiff's need for filing a surreply. Accordingly, this Motion will be denied.

Plaintiff's October 4, 2023 Motion for Leave to File a Surreply (ECF No. 85) was also premature because it was filed before Plaintiff had submitted any opposition, let alone before Defendant has submitted a reply. Notwithstanding the title of the motion, in substance it is functionally a brief in opposition to Defendant's Summary Judgment Motion. Given Plaintiff's

17

pro se status, the Court has overlooked the title of the motion and considered the arguments therein in reviewing the Summary Judgment Motion. However, to the extent that the Motion is construed as indeed seeking leave to file a surreply, it was premature and will be denied.

Plaintiff's November 27, 2023 and February 7, 2024 (ECF Nos. 99, 121) Motions for Leave to File a Surreply are substantially similar to his prior Motions, and will be denied for the reasons stated above. Finally, Plaintiff's February 29 Motion for Leave to File a Surreply (ECF No. 141) makes unfounded allegations of perjury. To the extent it seeks leave to file a surreply, it will be denied.

### B. Plaintiff's Motions in Limine (ECF Nos. 68, 76, 86, 140)

Plaintiff has filed four Motions in Limine. A motion in limine is timely only after dispositive motions have been resolved and the case has been scheduled for trial. *Jha v. XCube Rsch. & Dev., Inc.*, Civ. No. 8:18-00364-PX, 2018 WL 4538552, at *2 (D. Md. Sept. 20, 2018). Here, this case will not be going forward to trial, so the motions must be denied as moot. That said, they are also substantively meritless.

The September 6, 2023 Motion in Limine seeks to preclude the Court from considering "any court proceedings in the past that have been dismissed or sealed or 'expunged,' and any statements made in pending case 1:23-cv-00376-JRR." (ECF No. 68.) Defendant has not sought to introduce any evidence from these cases, so this Motion is moot.

The September 22, 2023 Motion in Limine seeks to prevent Defendant from introducing any evidence that he was terminated from his employment because of "Job Abandonment." (ECF No. 76.) Plaintiff also states that "[i]t will be Perjury, if the Court allows the Defense to state 'Job Abandonment' as a defense or reason to terminate." This Motion is meritless, because Defendant—like Plaintiff—is entitled to assert any relevant claim or defense that has a colorable

grounding in law and fact. The October 4, 2023 Motion is substantially identical to the September 22, 2023 Motion, with the only change being that Plaintiff seeks to prevent Defendant from introducing evidence that he was terminated for Job Abandonment or for violations of "BJ's Wage & Hour Policy." (ECF No. 86.) Like the September 22, 2023 Motion, this Motion is not grounded in any argument from the law of evidence and is thus meritless.

Finally, the February 29, 2024 Motion in Limine seeks to exclude Defendant's evidence because of "perjury" and on the grounds that the evidence is inadmissible and/or prejudicial under Federal Rules of Evidence 402 and 403, respectively. (ECF No. 140.) However, the Motion does not point to specific pieces of evidence, or explain why they are inadmissible other than stating Plaintiff's opinion that Defendant's evidence "contradicts the truth." This is too vague an allegation to justify exclusion of evidence.

For these reasons, the Motions in Limine will be denied.

### C.  Plaintiff's Motion to Suppress Testimony (ECF No. 130)

This Motion seeks to "exclude all evidence submitted by defendant and censor testimony at trial" on the grounds of perjury. (ECF No. 130.) In the Motion, Plaintiff rehashes his legal arguments about Defendant's alleged failure to follow safety guidelines and to accommodate his disabilities. (*Id.*) But he provides no evidence that Defendant has committed perjury. Perjury is a serious charge, especially when leveled against opposing counsel, and this Court would require compelling evidence before it would even consider imposing the kind of remedy Plaintiff seeks. Here, there is no such evidence whatsoever. The Motion will be denied.

### D.  Plaintiff's Other Motions (ECF Nos. 105, 113, 115, 139)

Plaintiff has filed two Motions for leave to proceed in forma pauperis (ECF No. 105, 113), a Motion to Remove or Mark Electronic Court Filing as Error (ECF No. 115), and a Motion to

exclude Defendant from jury selection (ECF No. 139).  These motions will be denied as moot because this case is not proceeding to trial.

## IV.    CONCLUSION

For the foregoing reasons, a separate order will issue granting summary judgment in Defendant's favor on all of Plaintiff's claims.  The order will also deny Plaintiff's various motions, deny as moot an earlier version of Defendant's Summary Judgment Motion that was filed in error (ECF No. 79), and direct the Clerk to close the case.

DATED this ___8___ day of March, 2024.

BY THE COURT:

James K. Bredar
Chief Judge